UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Christine Klimek,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CentraCare Health System<br>George A. Morris, M.D.,<br><br>　　　　Defendants. | Court File No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Christine Klimek is an individual residing in the City of Alexandria, County of Douglas, State of Minnesota. Plaintiff is a former employee of Defendant CentraCare Health System ["CentraCare"].

2. Defendant CentraCare Health System is a Minnesota non-profit corporation and is registered with the Secretary of State to do business in Minnesota. Defendant's registered office is 1406 North 6th Avenue, St. Cloud, Minnesota 56303.

3. Defendant George A. Morris is, on information and belief, a resident of the City of St. Cloud, Minnesota, and an employee of CentraCare Health Systems.

4. Plaintiff brings this case pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* As such, this Court has original jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff also asserts a claim under the Minnesota Human Rights Act, Minn. Stat. § 363.03A, *et seq.* As such, jurisdiction is established under 28 U.S.C. § 1367.

5. All other jurisdictional requirements have been met. In particular, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity

Commission and has received a Right to Sue letter from the Commission regarding her Americans with Disabilities Act claim.

6. Venue is proper in this Court because the unlawful actions alleged herein occurred in Minnesota, where CentraCare has its principal place of business, and where it employed the Plaintiff.

## FACTUAL ALLEGATIONS

7. In March 2008, CentraCare hired Plaintiff as a full-time Registered Nurse in its Inpatient Acute Dialysis Unit. This position required Plaintiff to work in CentraCare's Kidney Dialysis Inpatient Unit, Intensive Care Unit, and Cardiac Care Unit.

8. On February 26, 2010, Plaintiff suffered a work-related injury to her right arm while working in CentraCare's Intensive Care Unit during the H1N1 Influenza pandemic. This injury resulted severe impairments to Plaintiff's right arm and was diagnosed by a treating physician as Complex Regional Pain Syndrome/Reflex Sympathetic Dystrophy ("CRPS" or "RSD"). As a result of this condition, subsequent insults and injuries anywhere on Plaintiff's body result in permanent and debilitating injuries, both physical and neurological. These injuries cause Plaintiff increased chronic pain issues throughout her body. Plaintiff's condition has resulted in various impairments, including reduced use of her arm, persistent tremors, chronic pain, and greatly increased susceptibility to injury. These impairments have affected her ability to work in her chosen field, as well as numerous daily life activities, and are a constant source of difficulties and aggravation.

9. Plaintiff filed a workers' compensation claim with CentraCare's insurance carrier based on her arm injury. The carrier admitted liability for Plaintiff's injury, and paid Plaintiff both full and partial wage loss benefits, permanency, medical benefits and rehabilitation benefits. Those benefits were paid over a period extending through 2019. The Plaintiff initially missed work because of her injury, and then was returned to work in various light-duty capacities. Since 2013, she has been fully able to work at CentraCare while performing all of the essential functions of her job.

10. A permanent medical exemption letter related to Plaintiff's disability was submitted to CentraCare on or about August 3, 2016 (the "Exemption Letter"). The Exemption Letter was submitted to CentraCare after CentraCare implemented mandatory Influenza and Measles-Mumps-Rubella vaccinations for all employees. The Exemption Letter was provided by Plaintiff's pain management physician, Dr. Samuel Elghor, who stated Plaintiff should be exempt from any and all vaccinations due to her condition.

11. Plaintiff voluntarily provided CentraCare access to her medical records concerning her work-related injury and subsequent disability diagnosis. These records show Plaintiff's ongoing treatment, including but not limited to multiple ganglion injections, a right-sided pneumothorax requiring hospitalization and chest tube placement, surgery to perform right arm reconstruction, a lengthy rehabilitation, and a detailed return-to-work plan after surgery.

12. CentraCare monitored Plaintiff's progress, treatments, surgeries, therapies, and workers' compensation coverage arising from her work-related injury and disability.

CentraCare also implemented several changes throughout the hospital to prevent similar work-related injuries.

13. In 2016, CentraCare notified Plaintiff by email that its Medical Exemption Review Committee acknowledged and approved her permanent medical exemption from all vaccinations. In doing so, CentraCare acknowledged that Plaintiff had an impairment which affected her ability to work, as well as to engage in several other life activities.

14. CentraCare accommodated Plaintiff's disability by allowing her to wear a mask in all patient rooms and treatment areas in which patients were being served.

15. CentraCare also required Plaintiff to complete an annual online Influenza policy training module, which she did each year.

16. In May 2021, Plaintiff transitioned to the role of Registered Nurse Clinical Documentation Specialist. This new position did not require Plaintiff to interact in-person with patients, co-workers, or providers. Instead, Plaintiff worked remotely full-time from May 2021 until CentraCare placed her on "involuntary unpaid leave" in December 2021.

17. On August 23, 2021, CentraCare sent an email to all employees informing them of its COVID-19 vaccination mandate ("COVID-19 Vaccination Mandate"). The COVID-19 Vaccination Mandated stated: "Medical exemptions will be granted to people who can provide physician documentation for a diagnosis considered a contraindication for COVID-19 vaccination."

18. Upon receiving the COVID-19 Vaccination Mandate, Plaintiff immediately contacted CentraCare on August 23, 2021, asking if she needed to apply for a COVID-19

vaccination exemption given the fact that she already had a permanent medical exemption from any and all vaccinations.

19. CentraCare told Plaintiff that she was required to re-apply for a new medical exemption because the COVID-19 Vaccination Mandate was being considered separately from CentraCare's previous vaccination mandates.

20. On August 24, 2021, Plaintiff attended her annual wellness examination with Jennifer Chirhart, a Certified Nurse Practitioner and Plaintiff's primary care provider.

21. During this examination, Plaintiff and Ms. Chirhart completed the required "Request for Medical Exemption/Accommodation from Mandatory COVID-19 Vaccination" paperwork required by CentraCare.

22. Ms. Chirhart confirmed Plaintiff's disability and need for accommodation, stating that, "It is not recommend [Plaintiff] get any vaccines due to her RSD[,]" and that she was "to be exempt from receiving the COVID vaccine."

23. Plaintiff provided this recommendation and all required documentation to CentraCare as part of her request for a medical exemption from the COVID-19 Vaccination Mandate.

24. Plaintiff also explicitly made herself available to engage in the interactive process with CentraCare.

25. On October 15, 2021, Plaintiff received the first letter from CentraCare denying her medical exemption request.

26. In its letter CentraCare did not provide any explanation for its decision, nor did it identify any reasons for denying Plaintiff's medical exemption request.

27. CentraCare did not interactively engage with Plaintiff to discuss potential solutions to accommodate her disability, nor make any attempt to do so.

28. Plaintiff immediately contacted CentraCare requesting information about an appeal process. CentraCare informed Plaintiff there would be no appeal process because appeals are "built into the Medical Exemption Review Committee's review and decision process and there will not be an opportunity to appeal."

29. On November 1, 2021, Plaintiff received a second letter from CentraCare stating that "some" religious and medical exemption requests were being granted a re-review upon request. This letter was, unlike almost all other similar communications, was sent via United States Mail rather than electronically. It was further sent to an incorrect address, and as such, was not received by Plaintiff until the day of the stated deadline for filing appeals. Plaintiff immediately contacted CentraCare and requested an extension to submit a rebuttal. CentraCare responded by allowing Plaintiff two days to submit a rebuttal.

30. Plaintiff timely submitted an additional four-page letter outlining her work-related injury which resulted in her permanent disability. With this letter, Plaintiff included letters from her medical providers, all of whom agreed she should be accommodated with an exemption from the COVID-19 Vaccination Mandate. Those medical providers are all employed by CentraCare.

31. On November 19, 2021, Plaintiff received a third letter from CentraCare denying her medical exemption request without discussion or explanation.

32. CentraCare again failed to identify any reasons for denying Plaintiff's medical exemption request.

33. CentraCare also again failed to interactively engage with Plaintiff to discuss potential solutions to accommodate her disability.

34. On November 23, 2021, Plaintiff submitted a letter to CentraCare requesting a detailed explanation and specific reasons for the denial of her medical exemption request.

35. CentraCare refused to provide an explanation, nor did it identify any specific reasons for the denial of Plaintiff's medical exemption request.

36. Rather than respond to Plaintiff's request for an interactive process, CentraCare requested that Plaintiff have a remote meeting with Dr. George Morris, the lead physician for CentraCare's COVID-19 Incident Command. The remote meeting occurred on December 3, 2021.

37. At this meeting, Plaintiff asked Dr. Morris why her medical exemption request was denied by CentraCare. Dr. Morris said he would not provide an explanation for the denial.

38. During the meeting Dr. Morris stated he was not aware of all facts related to Plaintiff's medical disability, nor had he reviewed the letters submitted by Plaintiff's medical providers in support of her medical exemption request.

39. In addition, during this conversation Dr. Morris refused to engage in any interactive process to determine if accommodations could be made based on Plaintiff's disability.

40. Instead, Dr. Morris stated that Plaintiff would be placed on "involuntary unpaid administrative leave" if she did not receive the COVID-19 vaccination by December 15, 2021. This "involuntary unpaid administrative leave" was obviously a bureaucratic way of referring to employment termination. Upon information and belief, this conversation between Plaintiff and Dr. Morris was recorded, and is available for inspection.

41. On December 16, 2021, Plaintiff was placed on "involuntary unpaid administrative leave." During this "involuntary unpaid administrative leave," CentraCare refused to allow Plaintiff to use her accumulated paid time off, despite having earned said paid time off. This "involuntary unpaid administrative leave" constituted a constructive discharge of employment.

42. After being placed on "involuntary unpaid administrative leave," Plaintiff was also denied unemployment benefits after CentraCare challenged her request by claiming Plaintiff had engaged in "employee misconduct" by not receiving the COVID-19 vaccination.

43. Plaintiff appealed the unemployment benefit denial and won that case against CentraCare. The administrative judge determined that CentraCare had, in fact, *not* considered Plaintiff's specific diagnosis which contraindicated receiving the COVID-19 vaccination. Plaintiff was therefore granted full unemployment benefits.

44. On June 1, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination. Plaintiff's Charge was cross-filed with the Minnesota Department of Human Rights.

8

45. Plaintiff has exhausted her administrative remedies and received her Right-to-Sue Notice from the EEOC.

## CAUSES OF ACTION

### COUNT I
### Violation of the Americans with Disabilities Act
### (Failure to Accommodate)

46. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

47. The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), provides that it is an unlawful employment practice for an employer to discriminate against a qualified individual on the basis of disability with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. This unlawful discrimination includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business. 42 U.S.C. § 12112(b)(5). As part of the reasonable accommodation process, employers are required to engage in an "interactive process" with employees seeking accommodation, in order to determine whether accommodation is possible.

48. The ADA, 42 U.S.C. § 12102(1), defines "disability" to include any person who (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.

49. Plaintiff and CentraCare are "employee" and "employer," respectively, within the meaning of the ADA, 42 U.S.C. § 12111.

50. Plaintiff suffers from an impairment that substantially and materially limits one or more life activities and has a record of such impairment.

51. CentraCare failed to initiate an interactive process to ascertain a reasonable accommodation for Plaintiff, and in fact repeatedly refused to engage in such a process.

52. CentraCare failed to accommodate Plaintiff's known and admitted disability.

53. The conduct of CentraCare described herein violated the ADA.

54. As a direct result of CentraCare's unlawful conduct, Plaintiff has suffered and will continue to suffer damages for lost compensation, emotional anguish, and other damages.

## COUNT II
### Violation of the Minnesota Human Rights Act
### (Failure to Accommodate)

55. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

56. The Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.08, subd. 2, provides that it is an unlawful employment practice for an employer to discharge an employee or discriminate against a person with respect to the hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment because of their disability.

57. The MHRA, Minn. Stat. § 363A.08, subd. 6, provides that it is an unlawful employment practice for an employer "not to provide a reasonable accommodation for a job applicant or qualified employee with a disability unless the employer, agency, or

organization can demonstrate that the accommodation would impose an undue hardship on the business, agency, or organization."

58. The MHRA, Minn. Stat. § 363A.03, subd. 12, defines "disability" to include any person who (1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.

59. Plaintiff and CentraCare are "employee" and "employer," respectively, within the meaning of the MHRA, Minn. Stat. § 363A.03.

60. Plaintiff suffers from an impairment that materially limits one or more life activities and has a record of such impairment.

61. CentraCare failed to initiate an interactive process to ascertain a reasonable accommodation for Plaintiff.

62. CentraCare failed to accommodate Plaintiff's known and admitted disability.

63. The conduct of CentraCare described herein violated the MHRA.

64. As a direct result of CentraCare's unlawful conduct, Plaintiff has suffered and will continue to suffer damages for lost compensation, emotional anguish, and other damages.

### Count III
### Aiding and Abetting Discrimination
### Dr. George Morris

65. Plaintiff restates and realleges all previous paragraphs as if fully set forth herein.

66. The MHRA, Minn. Stat. § 363A.08, subd. 2, provides that it is an unlawful employment practice for an employer to discharge an employee or discriminate against a person with respect to the hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment because of their disability.

67. The MHRA further provides that "[i]t is an unfair employment practice for *any person* intentionally to aid, abet, incite, compel, or coerce a person to engage in any of the practices forbidden by this chapter." Minn. Stat. 363A.14(1)(emphasis added).

68. Defendant George Morris intentionally aided and abetted illegal discrimination against Plaintiff when he failed to engage in the interactive process, refused to consider Plaintiff's requests for accommodation, and ultimately directed and abetted her termination of employment.

69. The conduct of Defendant Morris described herein violated the MHRA.

70. As a direct result of Defendant Morris' unlawful conduct, Plaintiff has suffered and will continue to suffer damages for lost compensation, emotional anguish, and other damages.

## DEMAND FOR JURY TRIAL

71. Plaintiff requests jury trial with respect to all issues triable to a jury.

## REQUEST FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants as follows:

A. That the above-alleged conduct of Defendants be determined and adjudged to be unlawful violations of the ADA and the MHRA;

B.  For all relief recoverable under the ADA and the MHRA, including but not limited to, back pay, front pay, lost benefits, emotional distress, and mental anguish;

C.  For treble damages pursuant to Minn. Stat. §§ 363A.29, 363A.33;

D.  For punitive damages pursuant to Minn. Stat. §§ 363A.29, 363A.33 and 42 U.S.C. § 1981a;

E.  For a civil penalty against Defendant pursuant to Minn. Stat. §§ 363A.29, 363A.33;

F.  For an award of attorneys' fees, costs, and disbursements incurred herein;

G.  For further and other relief as the Court deems just and equitable.

Dated: December 30, 2022                **PARKER DANIELS KIBORT**

By /s/ *Alec J. Beck*
Alec J. Beck (#201133)
Jordon C. Greenlee (#397478)
888 Colwell Building
123 N. Third Street
Minneapolis, MN 55401
Telephone: (612) 355-4100
Facsimile: (612) 355-4101
beck@parkerdk.com
greenlee@parkerdk.com

**ATTORNEYS FOR PLAINTIFF**